UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. MARIA DEL ROSARIO RODRIGUEZ, Defendant. | Case No.: 19-cr-1962-L<br><br>**ORDER GRANTING MOTION TO REDUCE SENTENCE PURSUANT TO FIRST STEP ACT, 18 U.S.C. § 3582(c)(1)(A)(i) [ECF NO. 41]** |
|---|---|

On February 2, 2021, Defendant, Maria Del Rosario Rodriguez, filed a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) requesting modification of her custodial sentence to time-served in light of the health risks associated with remaining incarcerated during the COVID-19 pandemic. (Motion at 1 [ECF No. 41.])  The Government filed a Response and Opposition to the Motion on March 8, 2021.  (Oppo. [ECF No. 47.]) Defendant filed a Reply on March 11, 2021.  (Reply [ECF No. 48.]) Defendant's Motion is granted for the following reasons.

I.   **BACKGROUND**

On November 4, 2019, Defendant was convicted of Importation of Fentanyl, in violation of 21 U.S.C. §§ 952, and 960. A DEA lab confirmed that the amount of Fentanyl involved in the offense was 21.15 kg (46.63 pounds). [ECF No. 23 at 2.]  The Court sentenced Rodriguez to 21 months' imprisonment, which was 49 months below the

Sentencing Guidelines range as calculated by Probation. Defendant was also sentenced to three years of supervised release. Defendant self-surrendered in April 2020 three months after giving birth to her fourth child. (Mot. Ex. B. at 2.)

Defendant is incarcerated at Central Arizona Florence Correctional Center ("CCA") and has served about 11 months of the original sentence. She is scheduled for release September 15, 2021.

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

The First Step Act was enacted in December 2018, with the stated intention of increasing the availability and use of compassionate release for certain individuals. *See* Pub. L.No. 115-391 § 603(b)(titled "INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE"). Importantly, the Act paved the way for defendants to file compassionate release motions directly with the court, as opposed to relying on the BOP to file those motions on their behalf. *Id*. Under 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. No. 11-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub. L.No. 115-391, 132 Stat. 5194, §603.

On January 21, 2021, Defendant, represented by counsel, filed a request for compassionate release with the warden at Central Arizona Correctional Complex contending that she faced serious health risks if she contracted COVID-19 due to her "severe obesity, asthma, hypertension, and diagnosed mental health disorders." *See* Motion Ex. J. [ECF No. 41-2.]. In response, the Federal Bureau of Prisons responded that "Ms. Rodriguez remains in the custody of the United States Marshals Service at a private facility. Because Ms. Rodriguez is not in BOP custody, BOP cannot evaluate her for compassionate release and will not be seeking a motion for compassionate release on her

behalf at this time." *See* Mot. Ex. K [ECF NO 41-2]. As a result, the Parties agree that Defendant is excused from meeting the statutory exhaustion requirement because she is not currently in BOP custody.

### B. *Extraordinary and Compelling Reasons*

A court may modify a defendant's sentence "after considering the factors set forth in § 3553(a) to the extent applicable" if it finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13. The Sentencing Commission policy statement includes an application note that specifies the criteria that qualify as "extraordinary and compelling reasons." First, a defendant who is suffering from a terminal illness, such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia" may qualify. U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Second, a defendant can meet the standard if he or she is:

   (I)   suffering from a serious physical or medical condition,
   (II)  suffering from a serious functional or cognitive impairment, or
   (III) experiencing deteriorating physical or mental health because of the aging process,
   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G § 1B1.13, cmt. n.1(A)(ii). Third, a defendant may qualify on the basis of age if he or she is (1) at least 65 years old; (2) experiencing "a serious deterioration in physical or mental health because of the aging process"; and (3) has served at least 10 years or 75% of the sentence, whichever is less. U.S.S.G. §1B1.13, cmt. n.1(B). Fourth, certain family circumstances may be considered extraordinary and compelling. U.S.S.G. § 1B1.13, cmt. n.1(C). Last, the Commission provides that the BOP may identify "other reasons" that qualify as "extraordinary and compelling" reasons "other than, or in

combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n.1(D).

Defendant argues that the Court should grant her request because her severe obesity, along with her asthma, high blood pressure, hypothyroidism and anxiety increase her chance of serious illness or death from COVID-19. (Mot. at 10). According to Defendant, she has been in quarantine for the majority of her time in custody due to the failure of officials at Central Arizona Correctional Center to properly screen incoming inmates for medical conditions. (Mot. Ex. G.) She also asserts that her family circumstances constitute extraordinary and compelling reasons to grant her motion because her four children, ages 1 to 11, live with various family members and she is concerned their physical and emotional wellbeing is suffering from their separation from her. (*Id*. at 20-22). Defendant claims that the First Step Act, as amended, removed the Bureau of Prisons (BOP) as the exclusive gatekeeper for compassionate release motions, and granted the Court broad discretion to determine whether a defendant's medical conditions and family circumstances constitute "extraordinary and compelling reasons." (*Id*. at 7).

The Government acknowledges that Defendant's severe obesity meets the statutory threshold of "extraordinary and compelling reasons" while she is unvaccinated against COVID-19, but argues that once she is vaccinated, her obesity will no longer meet the threshold. (Opposition at 8 n. 5). In addition, the Government argues that the Court should deny Defendant's Motion because her asthma, hypertension, hypothyroidism, anxiety and family circumstances do not qualify as "extraordinary and compelling reason" for a sentence reduction. (*Id*. at 12-14). The Government claims that the First Step Act did not grant the broad discretion to determine what constitutes "extraordinary and compelling reasons" that Defendant suggests. Instead, the Government states that the Sentencing Commission policy statement continues to define the conditions which constitute "extraordinary and compelling reasons" to grant relief, or at a minimum provides persuasive guidance to district courts. Oppo. at 13. Even if Defendant meets

the criteria for "extraordinary and compelling reasons," the Government argues that Defendant poses a significant danger to the safety of the community, and the § 3553(a) factors weight against her release. (Oppo. at 15).

The Court recognizes that COVID-19 has created a serious health threat across the globe, throughout the United States, and particularly in the confined conditions of the BOP system. Although prisons have become a hotspot for COVID-19 outbreaks, the BOP has taken stringent precautions to limit the spread of COVID-19 in its facilities, implementing detailed protocols beginning March 13, 2020, which are updated frequently, in accordance with its Coronavirus (COVID-19) Action Plan. The Action Plan calls for limited inmate movement within facilities, required face-coverings, handwashing, and quarantine for newly admitted individuals or those returning from court hearings.[1] Despite these efforts, the confined spaces of correctional facilities have made it impossible to prevent all transmission of the virus.

It is undisputed that Defendant's severe obesity constitutes an "extraordinary and compelling reason" for relief within the categories specified in the policy statement's application note. *See* 18 U.S.C. §3582 and U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). Defendant is 5'2" and weighs approximately 255 pounds, equating to a Body Mass Index (BMI) of 46.6. (Mot. Ex. I at 10). The CDC defines obesity as a BMI of 30 or higher, and further classifies obesity of a BMI of 40 or higher as Class 3, "severe" or "extreme."[2] According to the CDC, individuals who are categorized as obese have an increased risk of severe illness with COVID-19, and "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI."[3] The Government attempts to downplay the inherent risk of

---

[1] *See* https://www.bop.gov/coronavirus/covid19_status.jsp.

[2] See https://www.cdc.gov/obesity/adult/defining.html.

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity

being confined while severely obese by stating that Defendant's obesity will no longer meet the statutory threshold once she is vaccinated, however this is not the proper test for determining which health conditions constitute "extraordinary and compelling reasons" under the First Step Act. Instead, at the time Defendant filed the present motion, her severe obesity increased her risk of serious illness or death if she was infected with COVID-19, and no evidence has been presented that she has received the COVID-19 vaccine. As a result, the Court finds Defendant's severe obesity is an "extraordinary and compelling reason" warranting a sentence reduction under section 3282(c)(1)(A).[4]

### C. Danger to the Community

The Court must also determine whether granting Defendant's request would result in a danger to "any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1)(A), (2), cmt. n. 1. The Court makes this assessment by addressing the factors set forth in § 3142(g), including, among other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose. 18 U.S.C. § 3142(g).

#### 1. Nature and Circumstances of Offense Charged

Defendant was convicted in the present case for importing over 40 pounds of fentanyl, an extremely dangerous controlled substance. She drove a vehicle registered in her name from her home in Phoenix, Arizona, to Riverside, CA, then to Tijuana, Mexico to commit the offense. (Oppo. at 5). However, Defendant's conviction for importation

---

[4] The Court does not determine whether Defendant's other medical conditions including asthma, hypertension, hypothyroidism, and anxiety, also meet the statutory threshold in light of the Court's determination that Defendant has met the criteria for "extraordinary and compelling reasons" for relief under section 3582, due to her obesity.

of fentanyl is a non-violent drug offense. Although there is an indication that Defendant engaged in similar conduct on a prior occasion, there is no evidence of violence or danger to others. Courts have denied compassionate release in cases involving especially violent underlying crimes, but there is no evidence that Defendant has a history of committing or engaging in acts of violence. *See generally United States v. Mondaca*, 2020 WL 1029024 (S.D. Cal. March 3, 2020).

### 2. *History and Characteristics of the Person*

The history and characteristics of a defendant include her "character, physical and mental condition, family ties, employment, financial resources. . . community ties, past conduct, history related to drug and alcohol abuse, criminal history," and whether at the time of the present offense the person was on probation or parole. 18 U.S.C. 3142(g)(3)(A)-(B).

Prior to her conviction, Defendant lived in Phoenix, Arizona with her four children. Defendant's sister describes Defendant as a good mother whose children do well in school and have perfect attendance. (Ex H. at ¶10). Defendant contends she brought two of her young children in the vehicle during the present offense because she did not want to leave them alone, and doesn't trust anyone else to care for her children. Since her incarceration, her sons Julian and Jordan have been living with one of her sisters in California, son Jaziel lives with a family friend in Arizona, and son Joel lives with Defendant's mother in Texas. (Ex. H. ¶ 6). Defendant claims that her release plan would include living at a home owned by her mother in Arizona with her four sons, working as a receptionist Liberty Tax Services, where her sister works as an office manager, and attending D'Image barber school in Phoenix, Arizona. (Mot. at 27, Ex H at 24).

Although she did not report it during her presentence interview, Rodriguez has a substance abuse history that includes the use of fentanyl, cocaine, heroin, methamphetamine, tobacco, and cannabis. (Mot. Ex. I at 235.) In January 2020, while she was on bond, Defendant admitted to using methamphetamine, indicating her ongoing

involvement in drug use. However, Defendant states that she has been drug free for over a year while in custody, and is no longer in the throes of drug addiction, therefore she has no incentive to return to drug addiction if released. (Reply at 12).

During her custodial time, Defendant has had no disciplinary infractions, and her security designation is "minimum." (Mot. Ex. C, E). Although Defendant admitted to crossing drugs before the current offense, this is her first criminal conviction. (Mot. Ex. A at 8).

### 3. Nature and Seriousness of Danger Posed by Release

The last factor the Court must consider is the "nature and seriousness of the danger to any person or the community" that release would impose. 18 U.S.C. § 3142(g). Defendant has family support from her mother and sister, along with a job waiting for her when she is released. Despite the fact that she brought two of her young children along with her when she committed the instant offense, she appears to be a devoted mother who is anxious to reunite with her young sons. Additionally, she will be supervised for three years by the Probation Department following her release.

Weighing the above factors, the Court finds that Defendant is not a danger to the safety of any other person or to the community upon release.

### D. § 3553(a) Factors

Under Section 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary, ... (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(2)(A)-(D). In addition to other factors, the sentencing court must also consider, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct[.]" § 3553(a)(1), (6). Section 3142(g) encompasses some of these factors, as noted above.

Defendant argues that the 3553(a) factors weigh in favor of the Court granting her request for a time-served sentence because, "[a]lthough the circumstances of the present offense may have qualified Ms. Rodriguez for the serious sentence that this Court originally imposed," she has served over 55% of her sentence, and it has been under the extremely restrictive conditions required by the COVID-19 pandemic. (Mot. at 26). This has included numerous lockdowns, restriction to a two-woman cell for 23 hours a day, for weeks on end, and a frequent lack of hot water, shampoo, and cleaning products. (Mot. at 27; Reply at 10). The pandemic restrictions have also made it impossible for her to visit with her four minor children, or consistently access drug treatment. (Reply at 10). Due to the pandemic, Defendant has faced conditions of confinement "unheard of for a minimum-security, non-violent, first-time offender inmate such as herself," resulting in a sentence that has more than sufficiently served the ends justice, including specific and general deterrence. (Reply at 12.) She also states that the Court can impose a condition of supervised release that requires her to serve the remainder of her sentence on home confinement. (Mot. at 22). Based on the above, Rodriguez claims that reducing her sentence to time-served is "sufficient, but not greater than necessary," to serve the purposed of sentencing under §3553(a). (Mot. at 27).

In response, the Government argues that the §3553(a) factors weigh against granting Defendant's request for compassionate release after she has served only half of her 21-month sentence because releasing her would "insufficiently punish her for her drug importation offense, for endangering her children and the community, and would do little to advance the objective of specific – not to mention general – deterrence. (Oppo. at 23.) The Government further contends that Defendant's involvement in drug trafficking creates a risk she will engage in this behavior again, particularly in light of her own drug use which she did not disclose to Probation during her PSR interview. (*Id*. at 24). According to the Government, Defendant used methamphetamine in January 2020, while

she was on bond, however the Court was unaware of this use at the time of sentencing when it cited her behavior as a reason for the substantial variance in this case. (*Id.*) Moreover, the Court was unable to order the RDAP program for Defendant at the time of sentencing, because she failed to disclose her drug usage to Probation. (*Id.*)

    *1. Seriousness of Offense, Just Punishment, Respect for Law*

At the time of sentencing, the Probation department recommended a sentence at the low-end of the Guidelines, at 70-months, while the Government recommended a sentence even lower, of 51-months. The Court weighed the section 3553(a) factors during sentencing and determined that a sentence of 21-months was sufficient to serve the ends of justice, punish Defendant for her actions, and provide specific and general deterrence.

Defendant has now served over half of her sentence under the extraordinarily difficult circumstances created by the COVID-19 pandemic, which have resulted in much more restrictive conditions than first-time, nonviolent drug offenders normally experience. The sentence, while low, was deemed sufficient at the time of sentencing, and her time in custody has been fraught with hardship, therefore, the Court concludes that her time in custody has sufficiently reflected the seriousness of her offense, has been just punishment, and has served as specific and general deterrence.

    *2. Nature and Circumstances of Offense & History and Characteristics of Defendant*

As noted above, Defendant was convicted in the present case for distributing over 40 pounds of fentanyl, an extremely dangerous controlled substance. Defendant used a vehicle registered in her name and crossed into Mexico with two of her young children in the vehicle. (PSR ¶97). It is unquestionable that Defendant's importation of fentanyl, a highly addictive and dangerous substance, is a serious offense. In addition, the Court was not aware of Defendant's drug use and might have sentenced her differently if that information had been presented. Defendant's past use of controlled substances is

concerning, particularly in light of her significant responsibilities as the primary caregiver of her four young sons.

However, the Court's determination that Defendant would not be a danger to others or the community upon release are applicable here. Defendant is now drug-free, has been separated from her children, including her newborn son, for over a year. She appears to be highly motivated to reunite with her children, secure a receptionist job with the help of her sister, and pursue further education opportunities.

*3. Comparative Sentencing Analysis*

Defendant has served approximately half of her 21-month sentence. The Government contends that releasing her now would insufficiently punish her for her drug importation offense and would create sentencing disparities among defendants with similar criminal backgrounds. (Oppo. at 21). Moreover, it would not serve the objectives of specific, or general, deterrence to release her. (*Id*. at 23).

In response, Defendant argues that she has served a "meaningful portion of her sentence" because the entire term of her incarceration has been during the COVID-19 pandemic when the conditions were harsher than normal for a first-time offender. (Reply at 10).

Courts have generally concluded that compassionate release should not be granted, even where extraordinary and compelling reasons exist, if the defendant has not served a significant portion of the custodial sentence. *See generally United States v. Ortiz*, 18cr2063 BAS (S.D. Cal. Sept. 11, 2020)(ECF No. 63)(Lompoc inmate convicted of drug offense had Type 2 diabetes, obesity, and hypertension but to grant release after only 15 months served of 77 month sentence "would create unwarranted disparities with other defendants with similar criminal backgrounds" and defendant already received substantial downward departure"); *United States v. Ramirez*, 18cr3623-MMA (S.D.Cal. July 16, 2020)(ECF No. 61)(Victorville inmate convicted of drug offense had COPD and asthma but granting release after 24 months of 72 month sentence "would strip the sentence of its deterrent effect and deny Defendant continued access to beneficial

correctional programs and treatment"); *United States v. Oliver*, 2020Wl 2768852, at 7 (E.D. Mich. May 28, 2020)(defendant with severe obesity denied compassionate release with court finding that "reducing his sentence to time served when he has served only three months of a ten-year sentence would lead to unwarranted sentencing disparities and improperly minimize the serious nature of his drug-trafficking offense.)

As of March 2021, Defendant had served approximately 55% of her custodial sentence of 21-months. Unlike other defendants seeking time-served sentences, Defendant has served a substantial portion of her original sentence. It is also significant that Defendant has endured the uncertainty, danger, and extraordinarily restrictive conditions created by the COVID-19 during her incarceration. As a result, the Court concludes that Defendant has served a meaningful portion of the sentence ordered by this Court which serves the goals of specific and general deterrence. Reducing Defendant's sentence to time-served is consistent with the factors in 3553(a).

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and reduces her sentence to time served, with the original three-year term of supervised release to begin upon her release. Defendant must contact the U.S. Probation Office within 72 hours of her release from custody.

**IT IS SO ORDERED**

Dated: April 14, 2021

Hon. M. James Lorenz
United States District Judge